FILED
2009 Aug-14  PM 03:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

CHANCE PRESLEY,                    ]
                                   ]
        Plaintiff,                 ]
                                   ]
    vs.                            ]    4:08-CV-1669-LSC
                                   ]
MICHAEL J. ASTRUE,                 ]
Commissioner,                      ]
Social Security Administration,    ]
                                   ]
        Defendant.                 ]

MEMORANDUM OF OPINION

I.    Introduction.

The plaintiff, Chance Presley, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI").  Ms. Presley timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Presly was twenty-four years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a tenth grade education.  (Tr.

at 421-22.) She attended special education classes in school. (*Id.* at 422.) She testified that she tried to obtain a GED but was denied access due to the fact that her effective grade level was "second and third grade." (*Id.*) Her entire past work experience consists of employment as a fast food worker for approximately two and one half months. (*Id.* at 423-24.) Ms. Presley claims that she became disabled on September 30, 2000, due to mental retardation. (*Id.* at 421.)

Ms. Presley was found eligible for child benefits on August 18, 2000. (*Id.* at 130.) On August 27, 2004, the Agency determined she was no longer disabled as an adult and terminated her disability benefits. (*Id.*) On September 30, 2004, Ms. Presley appealed, but withdrew her appeal on October 6, 2004. (*Id.* at 164-65; 138-39.) She filed the instant application on December 29, 2004. (*Id.* at 60-70.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(I). If he or

she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. § 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. § 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant can still do his or her past

relevant work, the claimant is not disabled and the evaluation stops.  *Id*. If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id*.  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.   20 C.F.R. § 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id*.

Applying the sequential evaluation process, the ALJ determined that Ms. Presley has not engaged in substantial gainful activity since the alleged onset of her disability.  (*Id*. at 24.)  According to the ALJ, Plaintiff's mild mental retardation, as evidenced by her Wechsler Adult Intelligence Scale-III score of 69, is a "severe" impairment based on the requirements set forth in the regulations.  (*Id*.)  However, the ALJ did not find that the Ms. Presley had shown that her claimed depression was a medically determinable impairment. (*Id*.) The ALJ found that Ms. Presley's impairment neither meets nor medically equals any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  (*Id*. at 28.)  The ALJ did not find Ms. Presley's allegations as to her depression to be totally credible, and he determined

that she has the following residual functional capacity: performing unskilled work at all exertional levels.  (*Id*. at 27.)

According to the ALJ, Ms. Presley has no past relevant work; she is a "younger individual"; she has a "limited education"; and she is able to communicate in English as those terms are defined by the regulations.  (*Id*.) He determined that Plaintiff's "[t]ransferability of skills is not an issue because the claimant does not have past relevant work."  (*Id*. at 28.)  The ALJ found that Ms. Presley has the residual functional capacity to perform unskilled work at all exertional levels.  (*Id*. at 25, 27-28.)  The ALJ used Medical-Vocation Rule 204.00 as a guideline for finding that there are a significant number of jobs in the national economy that she is capable of performing.  (*Id*.)  The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision."  (*Id*.)

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support

the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales,* 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the

reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

Ms. Presley alleges that the ALJ's decision should be reversed and remanded for nine reasons: whether the ALJ reopened the appeal of termination of benefits and wrongly considered the claim as an application for benefits instead of an appeal of termination of benefits; whether claimant meets listing 12.05(C); whether claimant meets listing 12.05(D); whether the decision was based in substantial evidence; whether the ALJ failed to develop the record; whether the Appeals Council erred in failing to remand the claim based on new evidence; whether the ALJ failed to state adequate reasons for finding claimant was not credible; whether the finding that the claimant has the residual functional capacity to perform light work is unsupported by substantial explanation; whether Rule 204.00 directs a finding of not disabled; whether there are adequate reasons for rejecting the consultive evaluation regarding IQ and depression. (Doc. 8.)

A.     Reopening of the Appeal.

Plaintiff contends that the ALJ reopened claimant's earlier appeal of termination of benefits when he considered the report of Dr. Bentley from the earlier termination of benefits decision.  (Doc. 8.)  Accordingly, Plaintiff contends the proper scope of review of her instant claim is whether her benefits were properly terminated rather than whether her claim was properly denied.

Federal courts generally lack jurisdiction to review a decision by the Secretary to refrain from reopening a prior claim for benefits. *Califano v. Sanders*, 430 U.S. 99 (1977). A final decision by the Secretary will be deemed reopened only if it is "reconsidered on the merits to any extent and at any administrative level." *Cherry v. Heckler*, 760 F.2d 1186, 1189 (11th Cir.1985); *Hall v. Bowen*, 840 F.2d 777, 778 (11th Cir.1987). The ALJ, however, must be allowed some leeway to evaluate how newly presented evidence relates back to the prior application in order to determine whether to reopen the case pursuant to 20 C.F.R. §§ 404.988, 404.989. *Hall*, 840 F.2d at 778; *Cherry*, 760 F.2d at 1189. Specifically, the Eleventh Circuit has held that an ALJ does not reopen a prior final decision when the ALJ evaluates

evidence presented in support of the original application solely to make a reasoned determination of its *res judicata* effect on the second application. *Cherry*, 760 F.2d at 1189. However, when an ALJ goes beyond evaluating evidence for its *res judicata* effect and instead reconsiders the merits of the prior decision, the federal courts have jurisdiction to review the prior decision to the extent that it has been reopened. *See Wolfe v. Chater*, 86 F.3d 1072, 1079 (11th Cir. 1996).

It does not appear from the record that the ALJ reconsidered the merits of Plaintiff's earlier determination of termination of benefits. Here, the ALJ used a report prepared by Dr. Bentley as evidence to evaluate the *instant* claims; he did not opine as to that report's application to the earlier determination – in fact, the ALJ made no mention of the earlier determination at all. Nothing in the record, or the consideration of Dr. Bentley's report, can be reasonably construed as a reconsideration on the merits. Plaintiff would have the rule be that a determination is reopened when the ALJ considers evidence, solely for the purposes of an instant determination, that is part of the previous record. Such cannot be the case. *See Rohrich v. Bowen*, 796 F.2d 1030, 1031 (8th Cir. 1986) (holding that

ALJ's discussion of Plaintiff's medical history, including reports from a previous Agency hearing, did not constitute a *de facto* reopening of that case; instead, they were necessary to determine whether the Plaintiff was disabled at the time of the instant application). *See also Wolfe*, 86 F.3d at 1079 (holding ALJ did not reopen earlier determination when he examined conflicting vocational expert testimony from two previous hearings (citing *Bowen*)). Accordingly, this appeal is in fact one reviewing the denial of benefits rather than the termination of benefits.

      B.    Listing 12.05(C).

Listing 12.05(C) reads:

12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
....
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

The ALJ acknowledged that Plaintiff is mildly mentally retarded and

possesses an IQ of 69. (Tr. At 24.) Plaintiff contends the ALJ erred in finding that 12.05(C) was nevertheless not met because of Dr. Bentley's and Dr. Wilson's reports which opined that Plaintiff suffered from depression. (Doc. 8, pp. 14-19.)

The Commissioner contends that, irrespective of the merits of the opinion, Dr. Wilson's report is immaterial in that, though it was submitted to the Appeals Council ("AC") and considered by them, it constitutes an examination performed after the ALJ's hearing and was thus irrelevant. (Doc. 9, p. 23). The Commissioner cites *Smith v. Soc. Sec. Admin.*,272 Fed. App'x 789, 800 (11th Cir. 2008) as support. "If a claimant submits new noncumulative and material evidence to the AC after the ALJ's decision, the AC shall consider such evidence, but only where it relates to the period on or before the date of the ALJ's hearing decision." *Id.* (quoting 20 C.F.R. § 404.970(b)). In *Smith*, the Eleventh Circuit affirmed the AC's refusal to consider doctor's reports on examinations conducted after the ALJ's decisions. *Id.* Here, Dr. Wilson's report (August 6, 2007) was conducted approximately three months after the ALJ's decision (May 12, 2007). Accordingly, this Court will not consider Dr. Wilson's report in reviewing the

ALJ's decision, and finds that the Appeals Council did not err in not remanding this case to the ALJ in order to reconsider in light of Dr. Wilson's report.

Returning to the issue of whether Plaintiff satisfies Listing 12.05(C), the ALJ rejected Plaintiff's claim that she suffered from depression. He specifically stated:

> Although Dr. Bentley [the SSA consultive psychologist] diagnosed the claimant with mild to moderate depressive disorder, the claimant did not allege depression during the hearing, she has no treatment notes, and has never been prescribed medication for treatment of depression. Moreover, based on Dr. Bentley's findings, he primarily relied on the claimant's unsupported statements regarding occasional depressive symptoms. Accordingly, the undersigned finds that the claimant has not shown that depression is medically determinable impairment.

(Tr. at 25).

Furthermore, the ALJ expressly states that he gave little weight to Dr. Bentley's diagnosis of depression as it was at odds with Dr. Bentley's own findings and "appears to be nothing more than an acceptance of the claimant's subjective complaints." (*Id.* at 27.) However, while Dr. Rowe's report indicates no diagnosis of depression, (Tr. at 114), Dr. Leonard's does. (Tr. at 170.)

Under Listing 12.05(C), the additional impairment is severe if it "impos[es] an additional and significant work-related limitation of function." Despite Dr. Bentley's diagnosis, his examination also revealed that her dress and grooming were satisfactory, there was no evidence of deterioration in her daily living skills, and her mood was "at most, mildly dysphoric." (*Id.* at 186). He found no evidence of anxiety and restlessness. (*Id.*) He noted she had several friends, socialized at church every week, and performed a variety of household chores. (*Id.*)

While it is true that Dr. Bentley (and Dr. Leonard) diagnosed Plaintiff as mildly depressed, mere diagnosis is not enough to support an award of benefits – the test under Listing 12.05(C) is the impact the impairment has on the ability to work. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.1986) ("'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work"). Thus, despite Dr. Bentley's diagnosis, his other findings do not support a finding that any depression she may suffer "impos[es] an additional and significant work-related limitation of function."

Plainitiff also argues that by not finding that Ms. Presley's depression

was severe, he was in effect substituting his judgment for that of the treating physician, a practice condemned by the Eleventh Circuit. *See Hillsman v. Bowen*, 804 F.2d 1179, 1182 (11th Cir. 1986). To the extent, if at all, that the ALJ found that Dr. Bentley's diagnosis of depression was erroneous because it was based purely on Ms. Presley's own "unsupported statements regarding occasional depressive symptoms" (Tr. at 25.), he has impermissibly substituted his own judgment for that of the consulting physician. *See Matthews v. Barnhart*, 347 F. Supp. 2d 1093, 1101-02 (M.D. Ala. 2003) (rejecting ALJ's rejection of a psychologist's opinion because it was based in part on subjective complaints). However, the issue here is not whether Ms. Presley suffers from mild depression, but whether that depression "impos[es] an additional and significant work-related limitation of function." As the ALJ noted, Dr. Bentley made no opinion as to whether Ms. Presley's depression impacted her ability to work, and, as discussed above, noted significant evidence that her daily activities suffered no deterioration or adverse effect. Thus, taking Dr. Bentley's diagnosis at its face, the evidence does not appear to support Plaintiff's assertion that her depression is a severe impairment. Furthermore, the opinions of consulting

physicians Drs. Rowe and Leonard state Plaintiff fails to satisfy Listing 12.05. (Tr. at 115, 171.) Thus, this is not the situation as in *Jones v. Barnhart*, 494 F. Supp. 2d 1284, 1289 (N.D. Ala. 2007), where the ALJ impermissibly discounted the *uncontroverted* medical testimony of the consulting psychologist who found that the Plaintiff met Listing 12.05(C). Dr. Bentley did not expressly opine as to Listing 12.05(C), but Drs. Rowe and Leonard did.

This Court agrees with the ALJ that Plaintiff does not meet the requirements of Listing 12.05(C).

C.    Listing 12.05(D).

Listing 12.05(D) reads:

12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . . .

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

Again, it is undisputed that Plaintiff suffers from mild mental retardation and satisfies the first prong of Listing 12.05(D). Plaintiff argues that she does satisfy Listing 12.05(D) and points to "the same evidence" as for Listing 12.05(C). (Doc. 8, p. 19.)[1] As discussed above, Dr. Wilson's report is not relevant. The only other evidence Plaintiff points to in support of her argument is that she is, in fact, mildly mentally retarded, has attended special education classes, has an impoverished vocabulary, poor self-esteem, and a mildly dysphoric mood. (Doc. 8.) However, Listing 12.05(D) requires, in addition to possessing an IQ score of 60-70, at least *two* other impairments. Nothing in the record, nor any evidence Plaintiff has pointed to, supports a finding of Ms. Presley suffering from even one, much less two, of these impairments. The opinions of state agency consulting physicians Dr. Rowe and Dr. Leonard only found that Ms. Presley suffered "moderate" degrees of the listed impairments, not "marked" degrees. (Tr. at 121, 171,

---

[1]The ALJ appears to have made no finding as to Listing 12.05(D).

177.)

Accordingly, the Court finds that Plaintiff does not satisfy Listing 12.05(D).

D.     ALJ's Opinion was not Based on Substantial Evidence.

Plaintiff also argues that there was not substantial evidence to support the decision because the hypothetical question the ALJ asked the Vocational Expert ("VE") was incomplete because it did not include the facts that Ms. Presley suffers from a low IQ and depression and that the ALJ assumed Ms. Presley could perform light work restricted only by "simple, one-two step instructions." (Doc. 8, p. 23.)[2] Furthermore, Plaintiff argues that the ALJ did not mention that Plaintiff received SSI benefits as a child for "low IQ and depression." (*Id.*)

The testimony of the VE, in order for it to constitute substantial evidence, must be in response to a hypothetical question posed by the ALJ that comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d

---

[2]There is no evidence that Plaintiff is physically impaired. Light work involves lifting no more than twenty pounds at a time with frequent lifting of ten pounds. *See* 20 C.F.R. § 416.967(b). There does not seem to be any question that Plaintiff is physically able to perform light work.

1224, 1229 (11th Cir. 1999). However, an ALJ need only include a claimant's

credible limitations. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155,

1161 (11th Cir. 2004).

The ALJ posed the following questions to the VE:

ALJ: Mr. Kinard, would you just, is there any past relevant work to describe?
VE: No, not in the least, I do.
ALJ: Okay, would you consider a hypothetical individual as the claimant's age, education, past relevant work experience to the extent that we've covered that, and this individual could be light work, although light-work would have to be the nature where it only involves simple one-two step instructions, only requires sustained attention, simple tasks for two hours at a time without a break, and only involves casual contact with supervisors, co-workers and general public and [inaudible]. So are there jobs in the local or national economy this individual could perform?
VE: Yes, sir.
ALJ: Would you describe them for me?
[The VE describes coin collectors, packager of small parts, and wire cutters.]
ALJ: All right. Consider the same hypothetical individual in this case, give credit to the claimant's testimony regarding how she has, how she has described her inability to follow instructions, maintain employment, and how her learning disabilities impact her activities of daily living, would that rather preclude jobs that you described?
VE: It would.

Plaintiff first argues that the ALJ ignored Dr. Wilson's consultive report

in framing his question. However, Dr. Wilson's examination was conducted

months after the hearing, so it was of course not available to the ALJ to

consider.

It is true that the ALJ never specifically mentioned Ms. Presley's low IQ in his hypothetical. (Tr. at 430-31.) However, the limitations he imposed in the hypothetical were in accord with the consulting physician's opinion as to the limiting effect of Plaintiff's retardation (i.e., both the hypothetical and Dr. Rowe's opinion expressed limitations including simple one-two step instructions, sustained work periods of two hours, casual supervision, and static work setting). (Tr. at 127.) Dr. Leonard concurred with these limitations. (*Id.* at 183.) Thus, the ALJ did include the Plaintiff's mental impairment when posing the hypothetical.

However, the ALJ did not include Plaintiff's depression in his hypothetical. While the ALJ found this diagnosis to not be credible, an ALJ must not substitute his opinion for that of a medical professional. Given that both Drs. Bentley and Leonard diagnosed Plaintiff with mild to moderate depression, such an impairment should have been included in the hypothetical. Thus, the testimony of the VE is not substantial evidence that there are jobs available in the local economy that Plaintiff can perform.

Accordingly, this case is due to be remanded to the ALJ for a

determination as to whether, considering Plaintiff's impairments comprehensively, there are available jobs in the economy that she can perform.

E.    ALJ did not State Adequate Reasons for Finding Claimant not Credible.

To the extent that the ALJ found Plaintiff's claimed depression not credible, this Court has already stated that such a finding was an impermissible substitution of the ALJ's judgment for that of a medical professional. While the opinion is somewhat unclear as to what, if any other statements by Plaintiff are also not credible, it seems undisputed that she suffers from mild mental retardation. The ALJ does appear to disagree generally with Plaintiff's contention that her mental retardation prevents her from working, but if this conclusion is based *specifically* on a finding that Plaintiff's statements are not credible, the reasons for so finding must be specifically articulated or must be obvious. *See Foote v. Chater*, 67 F.3d at 1561-62. Neither is present here. Accordingly, this case is due for remand to the ALJ for a specific credibility determination.

F.    Failure to Develop the Record.

Plaintiff also argues that the ALJ failed to properly develop the record because he failed to request additional testing. An ALJ does have a duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). If plaintiff is unrepresented, this duty rises to a higher standard of a special duty. *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).

Plaintiff was represented by counsel during the administrative proceedings. Furthermore, though the ALJ did not give great weight to Dr. Bentley's report, he had available to him Drs. Rowe and Leonard's report. The decision to order a consultive examination is based on whether the additional information is required. 20 C.F.R. § 416.919a(a)-(b). However, it is only an error to not procure an examination if such an evaluation is necessary to make an informed decision. *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988) (citations omitted).

The ALJ had one consultive examination from Dr. Bentley and two consultive examinations from the SSA doctors. These examinations were not in substantial disagreement (Dr. Bentley and Dr. Leonard diagnosed Ms. Presley with depression, Dr. Rowe was silent as to this; Drs. Rowe and Leonard did not find Plaintiff disabled, Dr. Bentley made no opinion as to

this). This Court does not find that the ALJ should have ordered an additional examination as the record was fully and fairly developed such that he could have made an informed decision.

F.    Failure to Remand.

This Court has already discussed that the Appeals Council did not err in failing to remand on the basis of Dr. Wilson's report as it was obtained after the relevant period.

G.    ALJ's Finding that Residual Functional Capacity to Perform Light Work is Not Supported by Substantial Evidence

Plaintiff argues that the ALJ's "conclusory" finding that Plaintiff can perform unskilled work at all exertional levels does not contain any rationale or reference to any supporting evidence as required by SSR 96-8p.

However, the record reflects that the ALJ does in fact support his finding of the Plaintiff possessing an RFC of unskilled work at all exertional levels. He states she is a physically healthy young woman, she performs most of the daily activities of daily living without significant assistance, performs community service part-time, she takes no medications, and has no functional limitations other than her mental retardation. (Tr. at 27.)

The ALJ expressly notes that he considered the diagnosis of depression by Dr. Bentley, but accorded it little weight because "it is inconsistent with claimant's medical history and his own findings, and appears to be nothing more than an acceptance of the claimant's subjective complaint." (*Id.*) However, to the extent that the ALJ is substituting his own judgment for that of Dr. Bentley, his failure to account for the potential limitations imposed by this impairment is in error. It may be that, even assuming her diagnosis of depression, the impairment is not severe enough to impose a limitation on Plaintiff's RFC. (It should be noted that Dr. Leonard also diagnosed Ms. Presley as depressed, but noted that the depression did not rise to the level of a severe impairment. (Tr. at 170.)) Thus, the ALJ's determination of Plaintiff's RFC is incomplete without an express consideration of the depression diagnosis's impact, and the case is due to be remanded for that determination.

H.    ALJ Exclusively Relied on the Grids.

The ALJ found that Medical-Vocational Rule 204.00 directed a finding of not disabled. (*Id.* at 28.) The Plaintiff argues this was in error because, when a claimant has non-exertional impairments which limit work skills,

exclusive reliance on the grids is inappropriate; the preferred method of demonstrating that the claimant can perform other jobs is through the testimony of a VE. *Jones v. Apfel*, 190 F.3d at 1229. The Commissioner concedes that exclusive reliance on the Grids is error, but contends it is harmless error because the ALJ did in fact pose questions to the VE, who found that there were jobs in the economy which Plaintiff could obtain. (Doc. 9, p. 27.)

This Court need not address the harmless error argument because it has already found that the VE's testimony was not substantial evidence given the absence of a mention of Plaintiff's depression in the hypothetical. Furthermore, whether or not such testimony is taken the ALJ may not rely exclusively on the Grids – there must be some indication in the opinion that the VE testimony was considered; otherwise, it appears that the ALJ relied exclusively on the Grids. *See Jones*, 190 F.3d at 1229.

Furthermore, the VE's testimony is not as cut-and-dried as the Commissioner makes out. After asking the VE his hypothetical, and the VE responding that there were jobs in the local and national economy, the ALJ asked:

ALJ: All right. Consider the same hypothetical individual in this case, give credit to the claimant's testimony regarding how she has, how she has described her inability to follow instructions, maintain employment, and how her learning disabilities impact her activities of daily living, would that rather preclude jobs that you described?

VE: It would.

(Tr. at 431-32.)

Thus, it appears that the VE's testimony, when he was asked to give credence to the Plaintiff's testimony, stated there *were not* jobs in the local economy that Plaintiff could perform (or at least there were no jobs such as he had described earlier). Thus, to the extent that the ALJ is discrediting (if that is what he has done) all or part of the Plaintiff's testimony such that the second hypothetical question has no bearing on the issue, such a determination needs to be articulated specifically. *Foote*, 67 F.3d at 1561 (ALJ must explicitly discredit testimony or it must be so clear as to amount to a specific credibility finding). It does not appear that the record is so clear that the Plaintiff's testimony was not credible, and it does not appear that the ALJ has made specific findings of non-credibility other than for Dr. Bentley's examination.

Accordingly, the case is due to be remanded for the ALJ's

determination of "disabled" or "not disabled" in light of proper VE testimony and not on exclusive reliance on the Grids.

I.      Rejection of the Consulting Physician's Opinion.

This Court has already stated that the ALJ improperly substituted his own opinion for the of Dr. Bentley as to the diagnosis of depression.

IV.   Conclusion.

Upon review of the administrative record, and considering all of Ms. Presley's arguments, this matter is due to be remanded to the ALJ for the determinations referred to above. The Court finds the Commissioner's decision, as to all other arguments by Plaintiff, to be supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 14th day of August 2009.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671